# Rebecca McNeal, Appellant, _v._ G. Rebman & Co.

_Alleys—Deeds—Boundaries._

An owner of land having divided it into lots, conveyed several of the lots, with the right to the use of an alley lying to the east of them. Subsequently he conveyed the fee simple title to the soil of the alley, together with a lot lying to the west of the alley, reciting the reservation of the right to use the alley granted to the owners of the lots lying on the westerly side of it. After this deed was executed he conveyed to plaintiff's predecessor in title a lot at the head of the alley and to the south of it, no part of which was on the westerly side of the alley. Defendants obtained title to all of the lots lying to the west of the alley and built a fence across its outlet. The court charged that, under the deed plaintiff had no right in the alley, but left it to the jury to say whether, at the time the deed to plaintiff's predecessor in title was executed, the alley was notoriously used as an alleyway appurtenant to the ground now owned by plaintiff. _Held_, not to be error, and that a verdict and judgment for defendants should be sustained.

Argued April 9, 1895. Appeal, No. 282, Jan. T., 1895, by plaintiff, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1893, No. 213, on verdict for defendants. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Trespass for obstructing an alley. Before JENKINS, J.

At the trial it appeared that prior to 1836, Edward B. Garrigues owned a lot of land at the corner of Thirteenth and Hamilton streets in the city of Philadelphia. He divided a block of this land into seven building lots shown by the plan on the following page.

On April 7, 1836, he conveyed lot G to Stacy Taylor, describing it in the deed as being bounded "eastward by three feet wide alley leading northward . . . . together with the use and privilege of said three feet wide alley at all times hereafter forever." On the same day he conveyed lot B to Stacy Taylor, with similar description and provisions as to the alley. On May 2, 1836, Garrigues conveyed lot D to Henry J. Childs, by deed, which contained after the description of the lot as follows: "Also a strip or piece of ground three feet wide situate at the rear end of the above described lot of ground at the distance of thirty-three feet from the south side of Greer street, and extending thence the same breadth eastward twenty-seven feet to the strip of ground three feet wide to be used as an alley and next hereinafter to be described and granted; bounded on the west

by lot of ground first above described; northward by ground
of Edward B. Garrigues and partly by ground of Stacy Taylor;
eastward by the said three feet wide alley; southward by the
said Jonathan Stratton's ground; also the strip or piece of
ground above mentioned and described as the three feet wide
alley leading northward into Greer street aforesaid, beginning
at a point seventy-two feet from the south side of said Greer
street and ninety-seven feet eastward from the east side of said
Thirteenth street; thence extending northwardly parallel with
said Thirteenth street, seventy-two feet to Greer street; then
eastward along said Greer street three feet; thence south
seventy-two feet to a point; thence westward three feet to the
place of beginning; the said described strip of ground having
been reserved by said Edward B. Garrigues to be left open and
as an alley, passage, and water course for the common and un-
interrupted use and privilege of the owners and occupiers of
the ground bounding on the westerly side thereof, together
with the free and uninterrupted use, right, liberty, and privi-
lege of said alley, passage, and water course in common with
the owners and occupiers of the lots respectively situate on the

westerly side thereof so long as the same shall be used as an alley or passage aforesaid."

Lot A was conveyed by Edward B. Garrigues to Charles McNeal in fee, by deed dated Sept. 20, 1836.

The premises were described as situate on the east side of Thirteenth street at the distance of sixty feet northward from the north side of James street (now Noble street), containing in front on said Thirteenth street eighteen feet, extending in depth eastward between lines parallel with said James street one hundred feet; bounded northward partly by ground granted on ground rent to Stacy Taylor, and partly by the head of three feet wide alley leading into Greer street; southward and eastward by ground of Isaac Davis, and westward by Thirteenth street aforesaid; "together with the free use and privilege of said three feet wide alley at all times hereafter forever."

Lot C was conveyed by Edward B. Garrigues to Abraham M. Assay in fee, by deed dated March the 13th, 1837, and describing the premises as a lot of ground situate on the east side of Thirteenth street, ninety-six feet north of James, eighteen feet front and ninety-seven feet deep, and bounded eastward by a three feet wide alley leading northward into Greer street (now Hamilton street); "together with the free use and privilege of said three feet wide alley at all times hereafter forever."

Lot H belonged to Edward B. Garrigues, but was not laid out in connection with the other lots, and was situate on the easterly side of the alley in controversy.

Lots B, C, D, E, F, and G, by sundry mesne conveyances became vested in the defendants prior to the institution of this action.

Lot A was conveyed by Charles McNeal and Rebecca his wife, to Henry Krier in fee, "together with the free use and privilege of said three feet wide alley at all times hereafter forever," by deed, dated Jan. 18, 1843; and by deed, dated June 23, 1862, Henry Krier and wife conveyed lot A in fee, "together with the free use and privilege of said three feet wide alley, at all times hereafter forever," to Rebecca McNeal, wife of Charles McNeal, who is the plaintiff in the pending action.

The defendants built a wall across the foot of this alley on Hamilton street in 1893, appropriating the whole surface of the alley to their own use, and thereby preventing the plaintiff from using the alley, whereupon this action was brought.

The court charged in part as follows:

" [Now Mr. Garrigues, who made this conveyance, would be bound by that conveyancĕ, and the lot of ground on the north of the seventy-two feet, that is, the lot of ground which is now owned by Mrs. McNeal, would have no right to use that strip of ground as an alley unless at the time of that conveyance by Garrigues to Childs it was notoriously used as an alleyway appurtenant to the lot of ground that now is owned by Mrs. McNeal.] [1]

" While you have no evidence of that directly before you, yet you do have some evidence of its being there at that time or shortly after the time of the conveyance to Mr. McNeal, but the lot was unimproved, as Mrs. McNeal says. She says she went through that alley. Well, she might have gone through that alley, but that does not necessarily say that the alley was appurtenant to this lot of ground, and here was the conveyance made by Garrigues to Childs, in which Garrigues speaks of this strip of ground and says it is left open for the use of the lots adjoining on the west. [The only question of fact for you to determine is whether or not that alley in 1836, at the time of the conveyance to Childs, was notoriously used as an alleyway appurtenant to this lot of ground owned now by Mrs. McNeal, and so notoriously used that Childs was bound to take notice of it, notwithstanding what is said in this deed, because so far as the deed was concerned he was only bound to take notice that that alley was to be used by the lots of ground bounding it on the west.] [2]   Garrigues would be bound by that deed, and Garrigues' grantee, who is McNeal, would be bound by that deed, and of course Mrs. McNeal would be bound by that deed because she claims through her husband. This is the only question which you have to determine.

" There is other testimony in the case which is perhaps of some weight with regard to that question, and that is that this alleyway was really fenced off so that the people who were occupying the property that was owned by Mrs. McNeal could not use it. There is testimony of one or two of the witnesses upon the part of the plaintiff that they did go through that alley, but you do not have the testimony that it was notoriously open and people going through, except as being so long ago you may infer it from the fact that these people say they went through. You have the testimony, however, of a number of

other witnesses upon the part of the defense that it was impossible to go through there; that the alley was fenced off; that it was not used as an alley. One man said that part of it was used by him as a dog kennel. Others say it was used as a place to put waste, refuse, or rubbish—that it was not used as an alley. [That evidence, so far as the user of that alley or nonuser of that alley, I am simply leaving to you, as it may or may not bear upon the question, so far as you are concerned, as to whether this alley in 1836, at the time of the conveyance to Childs, was notoriously open and being used as an appurtenance to the property that is now owned by Mrs. McNeal.] [3]

"I hope I have made myself plain to you. [It is an extremely narrow question which you have to pass upon. The deed to Childs binds Garrigues unless you find that at the time of the execution of that deed this alley was notoriously being used as an appurtenance to the McNeal property.] [4]

" There is a principle of law that does allow a man when he conveys, if he has left a way open, to say he did not intend to give up the right of way by the words of his deed, but the words of the deed by Garrigues to Childs are such as leave a very small loophole for anybody claiming through Garrigues to claim a title to this alley as appurtenant to the lot owned by Mrs. McNeal.

" As I have said to you, the only question for you to pass upon is, was that notoriously open at that time, so that Garrigues would be presumed by you as not having intended to say it was not to be used by him as appurtenant to the McNeal lot which he retained, but by this deed he conveys a strip of ground, conveys it as a strip of ground, and then speaks of it as having been reserved by him as an alleyway for the lots bounding on it on the west. [If you find that this lot of ground was notoriously used so as Garrigues ought not to be bound by the words of the deed, then you ought to find a verdict for the plaintiff for, say, six cents damages ; but if you find that it was not notoriously known so that Garrigues should be bound by the deed to Childs, then of course your verdict ought to be for the defendants.] " [5]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*M. Hampton Todd*, for appellant, cited: Salisbury v. Andrews, 19 Pick. 250; Cox v. Freedley, 33 Pa. 124; Miner's App., 61 Pa. 283; Lacy v. Green, 84 Pa. 514; Meigs v. Lewis, 164 Pa. 597.

*William W. Porter, Frederick J. Geiger* with him, for appellee, cited: Kirkham v. Sharp, 1 Wharton, 323; Lewis v. Garstairs, 6 Wharton, 193; Shroder v. Brenneman, 23 Pa. 348; Shurtz v. Thomas, 8 Pa. 359; Van Meter v. Hankinson, 6 Wharton, 307.

PER CURIAM, May 13, 1895:

It cannot be doubted that when the former owner, Garrigues, on May 2, 1836, conveyed the fee simple title to the soil of the alley to Childs, he deprived himself of all right or power to grant to any one, by a subsequent conveyance, any easement in the alley in question. Having no ownership of the land he could confer no right to use it. But the case in this regard is strengthened by the consideration that in the same deed to Childs he recited his previous reservations of the right to use the alley granted to the owners and occupiers of the ground bounding on the westerly side of the alley, and repeated the grant of the same privilege to Childs, with the same limitation to the lots on the westerly side of the alley. These grants necessarily excluded the plaintiff's lot which abutted on the south at the end of the alley. There is no occasion to resort to any extrinsic testimony to explain the meaning of these several conveyances, as they are perfectly free from doubt. The plaintiff's predecessor took his title with full record notice of all the prior grants and was bound by them. When the learned court below left to the jury the question of the notorious use of the alley by the occupiers of the McNeal lot at the time of the conveyance to Childs, every opportunity to recover that was possible was extended to the plaintiff. But the jury found against her and disposed finally of any such aspect of the case. There was no proof of title by adverse user, but on the contrary it was fully proved that the alley had been closed by high board fences for very many years. We discover no merit in the plaintiff's claim in any point of view.

Judgment affirmed.