176 So. 195

### SCOFIELD v. PERRY CREAMERY CO., Inc., et al.

### 6 Div. 78.

Supreme Court of Alabama.

June 17, 1937.

Rehearing Denied Oct. 14, 1937.

Foster, Rice & Foster and Hyman Rosenfeld, all of Tuscaloosa, for appellees.

BOULDIN, Justice.

The parties to this suit are dairymen engaged in the competitive business of selling milk in bottles at wholesale and retail in the city of Tuscaloosa and environs. It appears that on delivery of bottled milk to a customer, receiving a like number of empty bottles from the customer, it has been and still is a trade practice to accept any empty milk bottle of like size which the customer shall tender.

In this manner the bottles of one dairyman find their way into the possession of another. Formerly, much confusion of bottles between the numerous dairymen of that district resulted, and the loss of bottles by some dairymen was aggravated.

Some years ago a co-operative plan was devised, known as the Tuscaloosa Bottle Exchange, whereby each dairyman should deliver the bottles of others to the local exchange, and receive his bottles turned

Edw. de Graffenried, of Tuscaloosa, for appellant.

in by other dairymen, paying an expense charge to the Exchange.

It appears complainant, Perry Creamery Company and respondent, operating under the name of Northport Dairy, for some time did not utilize this exchange, but to save expense, operated a plan of their own in returning bottles. But in the summer of 1936, this plan was abandoned and both parties took advantage of the benefits of the exchange, and so continued to the filing of this bill. Both parties, in evidence, claim this to be a beneficial arrangement.

This bill, filed October 12, 1936, by Perry Creamery Company, charges that respondent, Northport Dairy, was failing to deliver complainant's bottles, fully identified by name blown in the bottle, or branded in color, with other identifying data, either to complainant or to the exchange, but was converting them to use in bottling and marketing milk of respondent without the consent of complainant and over repeated requests to desist; that this continuous practice constitutes an unlawful and injurious interference with the business of complainant for which there is no adequate remedy at law; and prayed an injunction against the further use of complainant's bottles in respondent's business. Southern Dairy Farm was permitted to intervene, on similar averments, as a party complainant.

Respondent by answer denied the substantial averments of the bill.

The cause was heard on testimony taken orally before the trial court.

From a decree granting the relief prayed, this appeal is prosecuted.

■ In the absence of some lawful arrangement for a common stock of bottles to be supplied and replenished by the several dairymen in fair proportions, the fact that in the course of business bottles of one dairyman came into the possession of another, gave no right to the latter to appropriate the bottles to his own use, even temporarily, without the consent of the owner.

While the co-operative exchange plan is voluntary, and the injunction very properly carries no mandatory requirement in that regard, dairymen who undertake to join therein, but do not live up to it by the prompt return of bottles, and convert them to their own use, acquire a distinct advantage over those who live up to the exchange obligations.

Appellant insists the evidence makes no case for an injunction; shows no necessity therefor under the guiding principles upon which this extraordinary relief is granted.

One principle relied upon is that mere apprehension of a wrongful course of conduct is insufficient. It must appear to the judicial mind that such continuous wrongful acts, working substantial injury to the property rights of the complainant, are imminent and in contemplation.

■ The injunction is prospective, preventive of future injury. O'Rear v. Sartain, 193 Ala. 275, 69 So. 554, Ann.Cas. 1918B, 593; Cullman Property Co. v. H. H. Hitt Lumber Co., 201 Ala. 150, 77 So. 574.

In considering this question, the past course of conduct, with the continuance of like conditions, offering the same inducements and opportunities for such wrongful invasion of the rights of complainant, are quite pertinent.

■ Without going into details of the evidence, we are of opinion, indulging the presumptions due the trial court on oral hearing, his findings on this issue should not be disturbed. A continuous, probably daily use of complainant's bottles easily identified by markings as averred, in substantial numbers, after repeated but polite requests to desist, and continuing to within a week of the filing of this bill when the city inspector took the liberty to seize eighteen quart bottles filled with milk at the bottling plant of respondent while bottling was going on in the presence of respondent, sufficiently appears.

Appellant further insists that the evidence discloses no such substantial irreparable injury, as will justify an injunction.

True, certain statements of complainant's witnesses disclose that their business has not been injured so far as they can tell; that their business is better than ever before. This evidence, however, taken in connection with the whole, refers to volume of business, and the condition of their business, notwithstanding the losses due to respondent's conversion of their bottles to his use. Other evidence is to the effect that such practice imposes an extra burden in keeping an adequate supply of bottles for current use, as well as aggravating the permanent loss of bottles.

On the whole, the evidence supports a finding that the matters complained of, resulting in complainant's supplying containers for their own business and also that of respondent, constitutes a hardship and substantial financial loss in the conduct of a going business. That the extent of such injury from day to day cannot be ascertained, and cannot be measured by any definite standard is one of the elements of irreparable injury.

Appellant cites Gulf Compress Co. v. Harris, Cortner & Co., 158 Ala. 343, 48 So. 477, 24 L.R.A.(N.S.) 399, in support of a proposition to the effect that injunctive relief will not be granted unless complainant's business would be ruined by such wrongful interference. Headnote 6 of that case must be read in connection with other facts recited therein, as well as in the opinion of the court, else it may become misleading. In that case the bill averred the wrongful practice complained of would ruin complainant's business. The court held the evidence did not sustain such averment.

That case, 158 Ala. 343 on page 351, 48 So. 477, 480, 24 L.R.A.(N.S.) 399, states the true rule in these words: "As a rule, where the wrong complained of can be redressed and fully compensated in damages by a money standard, a court of chancery will not assume jurisdiction for the reason that an adequate remedy exists at law. Where, then, the question is one of damage to individual or property rights, to warrant a court of equity in the assumption of jurisdiction, the damage must be in its nature irreparable, or incapable of measurement in dollars and cents, or unless coupled with some other independent matter of equitable cognizance. These are elementary principles."

See, also, Tallassee Oil & Fertilizer Co. v. H. S. & J. L. Holloway, 200 Ala. 492, 76 So. 434, L.R.A.1918A, 280; Bowen v. Morris, 219 Ala. 689-691, 123 So. 222; Town of York v. McAlpin, 232 Ala. 158, 167 So. 539.

On the whole evidence, we are not prepared to hold the granting of the injunction was not in the exercise of a sound judicial discretion.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.